UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDY TREVINO,<br><br>    Plaintiff,<br><br>    v.<br><br>ACOSTA, INC., et al.,<br><br>    Defendants. | Case No. 17-cv-06529 NC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>Re: Dkt. Nos. 8, 18 |

      Defendants Acosta, Inc., Mosaic Parent Holdings, Inc., and Mosaic Sales Solutions US Operating Co., LLC (collectively "Mosaic"), move to compel plaintiff Rudy Trevino to arbitrate his California Labor Code claims, and do so as an individual. In support of their motion, Mosaic cites the arbitration agreement that includes a class action waiver that Trevino purportedly signed. In opposition, Trevino argues that the arbitration agreement is unenforceable because: (1) it is illegal, (2) Mosaic cannot show mutual assent; and (3) it is unconscionable.

      The Court finds that the arbitration agreement is legal because in *Epic Systems Corp. v. Lewis*, 584 U.S. 1 (2018), the Supreme Court ruled that arbitration agreements that include class action waivers are enforceable. Additionally, the Court finds that Mosaic produced sufficient evidence to establish that Trevino signed the agreement and that there was mutual assent. Finally, the Court finds that the agreement is not

Case No. 17-cv-06529 NC

unconscionable, and must be enforced. Therefore, the Court GRANTS the motion to compel arbitration and to stay this action.

## I. BACKGROUND

Trevino is a former employee of Mosaic. Dkt. No. 8 at 26; Dkt. No. 18-1 (Trevino Decl.) at 1. Trevino alleges that, during his employment, he and "all similarly situated employees" experienced violations of the California Labor Code, perpetrated by Mosaic. Dkt. No. 1-1 at 1, 5–9. Mosaic moves to enforce an arbitration agreement that requires Trevino to arbitrate his employment related claims, and do so as an individual. Dkt. No. 8.

### A. Factual Background

In April 2017, Trevino completed the online onboarding application process for employment with Mosaic. Dkt. No. 18-1 (Trevino Decl.) at 2; Dkt. No. 8 at 11. Mosaic alleges that during the onboarding process, Trevino was asked to read and sign an agreement to individually arbitrate claims relating to employment between Mosaic and Trevino. Dkt. No. 8-1 at 7–10; Dkt. No. 21 at 5. While Trevino does admit that he completed the onboarding process, he does not recall seeing an arbitration agreement, and he denies signing the agreement. Dkt. No. 18-1 (Trevino Decl.) at 2.

### B. Procedural Background

On June 20, 2017, Trevino filed a class action complaint in Monterey County Superior Court. Dkt. No. 1-1 at 1. Mosaic removed the action to this Court based on the Class Action Fairness Act, 28 U.S.C. § 1332(d), and 28 U.S.C. § 1441(a). Dkt. No. 1. All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 6, 13. Mosaic then moved to compel arbitration and stay proceedings based on 9 U.S.C. § 3, which requires such a stay to be imposed by the Court; Trevino opposed the motion. Dkt. Nos. 8, 18.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), a contract which evidences intent to settle a controversy by arbitration is "valid, irrevocable, and enforceable" unless it can be revoked on "such grounds as exist in law for the revocation of any contract." *AT&T*

Case No. 17-cv-06529 NC    2

*Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The party seeking to compel arbitration must prove, by a preponderance of the evidence: (1) that a valid agreement to arbitrate exists and, if it does, (2) that the agreement encompasses the dispute at issue. *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). However, because of the strong policy favoring arbitration, all doubts are to be resolved in favor of the party moving to compel arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Finally, if a court grants a motion to compel arbitration, the Court must stay the proceedings pending arbitration. 9 U.S.C. § 3.

## III. DISCUSSION

Trevino argues that the arbitration agreement fails because: (1) agreements to waive class status are illegal; (2) there was no mutual assent; and regardless, (3) it is invalid based on the doctrine of unconscionability. The Court addresses each argument in turn and concludes that the arbitration agreement, including the waiver of class status, is valid and enforceable.[1]

### A. The Waiver of Class Status Is Not Illegal.

First, Trevino argues that the arbitration agreement is illegal because it contains a waiver of class status which violates the National Labor Relations Act ("NLRA"). Dkt. No. 18 at 6. Additionally, Trevino argues that the "illusory" opt-out option made the agreement illegal under *Gerton v. Fortiss, LLC*, No. 15-cv-04805 TEH, 2016 WL 613011 at *4–6 (N.D. Cal. Feb. 16, 2016). Dkt. 18 at 9. The Supreme Court's recent decision in *Epic Systems Corp.* addressed both of Trevino's arguments.

Trevino's first argument that the agreement violates the NLRA was decided by *Epic Systems Corp.* In *Epic Systems Corp.*, as here, the central issue was an arbitration agreement that included a waiver of class status, and plaintiffs raised the same violation of

---

[1] As for the second element in *Chiron,* the Court finds that "the agreement encompasses the dispute at issue" because the agreement explicitly embraces employment claims. Dkt. No. 8-1 at 7. Furthermore, Trevino does not claim otherwise. The Court does not discuss the issue further.

Case No. 17-cv-06529 NC         3

the NLRA as a reason to invalidate the arbitration agreement. *Epic Systems Corp.*, 584 U.S. at 2. The Court's opinion resolved a perceived conflict between the FAA and the NLRA. *Id*. The NLRA creates a statutory "right to organize and engage in concerted activities for the purposes of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. The FAA, on the other hand, compels courts to treat arbitration agreements as "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The conflict arises because the waiver of class status may be considered "concerted activity" and is contained in the arbitration agreement. Thus, plaintiffs argued that the FAA's command to enforce arbitration agreements according to their terms runs afoul of the NLRA's mandate to protect "concerted activities." However, the Supreme Court concluded that the NLRA did not override the FAA's mandate to enforce arbitration agreements "as written" because Congress did not manifest a "clear intention to displace" the FAA, and thus, the Court should interpret the two statutes to "work in harmony." *Epic Systems Corp.*, 584 U.S. at 25. With this in mind, the Court ruled that a class action lawsuit is not a "concerted activity" as envisioned by the NLRA and that waivers of class status should be enforced per the FAA. *Id*. at 2, 12, 25. Thus, Trevino's first argument fails.

Trevino's second argument—that the "illusory" opt-out clause renders the waiver of class status illegal—is equally untenable under *Epic Systems Corp*. In *Epic Systems Corp.*, the Court explained that "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue" are invalid. *Id*. at 7 (quoting *Concepcion*, 563 U.S. at 339). Specifically, the Court said that an objection to proceedings "because they require individualized arbitration proceedings instead of class or collective ones" is invalid. *Id*. Here, Trevino is arguing that by law, a waiver of class status requires a clear opt-out provision. Dkt. No. 18 at 14–15. His argument is invalid because it is applicable only to arbitration clauses that contain waivers of class status and is thus specifically prohibited by *Epic Systems Corp*. In any event, the Court finds that the language of the opt-out provision was clear. Thus, Trevino's second argument fails.

However, *Epic Systems Corp*. did not foreclose the possibility of invalidating a

Case No. 17-cv-06529 NC 4

contract by "generally applicable contract defenses, such as . . . unconscionability." *Epic Systems Corp.*, 584 U.S. at 7 (quoting *Concepcion*, 563 U.S. at 339). With this in mind, the Court proceeds to evaluate Trevino's other arguments.

### B. The Arbitration Agreement Is Valid.

Next, Trevino argues that the arbitration agreement is unenforceable for lack of mutual assent because: (1) Mosaic's evidence is inadmissible; and (2) Mosaic fails to establish that a valid arbitration agreement exists.

Contract-based challenges to an agreement to arbitrate are governed by state law. *Cox v. Ocean View Hotel Corp.*, 553 F.3d 1114, 1122 (9th Cir. 2008). In California, the party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement, while a party opposing arbitration bears the burden of proving any fact necessary to its defense. *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836, 842 (2014).

#### 1. Admissible Evidence

Trevino requests that the Court strike (i) the supplemental declaration of Ava Miner and (ii) the arbitration agreement. Trevino also asserts that Mosaic added new arguments in its reply, but does not explain which arguments are new.

##### i. The Supplemental Declaration of Ava Miner is Admitted.

First, the Court considers Trevino's objection to the supplemental declaration of Ava Miner. Trevino argues that the Court should strike the declaration because it is "new evidence." Dkt. No. 22 at 2. For this proposition, Trevino cites *Tovar v. United States Postal Service*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993) and *Provenz v. Miller*, 102 F.3d 1478, 1583 (9th Cir. 1996). Dkt. No. 22 at 7.

In *Tovar,* plaintiff introduced new statistics to support her claim in a reply brief, "on appeal." *Tovar*, 3 F.3d at 1273 n.3. The Ninth Circuit struck the evidence it considered "new" because it was outside of the record compiled by the district court. *Id*. Here, the case is not on appeal and thus, *Tovar* is not applicable. In *Provenz*, plaintiff moved to strike defendant's "new evidence" contained in defendant's reply brief in support of its

Case No. 17-cv-06529 NC 5

motion for summary judgment. *Provenz*, 102 F.3d at 1483. The district court denied plaintiff's motion and furthermore, refused to consider plaintiff's supplemental declaration. *Id.* The Ninth Circuit found that the district court erred in refusing to consider plaintiff's supplemental declaration, but upheld the decision not to strike "new" evidence raised in defendant's reply brief. *Id.* The court explained that "new" evidence in a reply brief will not be considered without giving the opposing party an opportunity to respond, but that there, the opposing party was given the opportunity. *Id.*

Even if there is "new" evidence presented in the supplemental Miner declaration and reply brief, Trevino responded to it. Dkt. No. 22. Therefore, the Court declines to strike the supplemental declaration of Ava Miner or Mosaic's reply brief.

### ii. The Arbitration Agreement Is Not Inadmissible as Hearsay.

Next the Court considers Trevino's argument that the arbitration agreement, Exhibit C to Mosaic's motion to compel, should be excluded as hearsay because it fails to meet the requirements of the "business records" exception. Dkt. No. 8-1 at 7–10; Dkt. No. 22 at 6.

Evidence is inadmissible under the hearsay rule if it is a statement, made outside of court, that is offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The "business record" exception allows hearsay to be admitted as evidence if: (1) it was regular business practice to make that record; (2) it was kept in the regular course of business; (3) it was made by a person with knowledge; and (4) it was made at or near the time the event recorded. *Clark v. City of Los Angeles*, 650 F.2d 1033, 1036–37 (9th Cir. 1981).

The arbitration agreement is a written statement, made outside of court and is offered to prove the truth of the matter asserted—that Trevino and Mosaic agreed to arbitrate. It is therefore hearsay. However, the Court finds that the business records exception does apply. The Court will evaluate each requirement.

As to the first two requirements, Miner declared that the agreement was made by and kept on the onboarding system, "Taleo," in the regular course of business. Dkt. No. 8-1 (Miner Decl.) at 1. Trevino does not challenge this.

On the third requirement, Trevino argues that "Miner's declarations establish that

Case No. 17-cv-06529 NC            6

she is not 'a person with knowledge.'" Dkt. No. 22 at 7. The Court can only guess Trevino is referring to alleged inconsistencies in Miner's declaration; in particular, Trevino mentions that Miner listed items that would appear on a letter offer to Trevino, but none of them appeared in the email offer. Dkt. No. 8-1 (Miner Decl.) at 2, 5; Dkt. No. 22 at 3–4, 7. The Court finds no such inconsistencies. Miner declared that the items listed would appear in the "offer letter." Dkt. No. 8-1 (Miner Decl.) at 3. While the items do not appear in the offer *email*, the email does contain a link to an "offer *letter*." *Id.* at 5. Thus, the fact that the items are not listed directly in the email does not discredit Miner. Therefore, the Court finds no reason to find that Miner is not "a person with knowledge."

On the fourth requirement, Trevino argues that there is no indication that the arbitration agreement was made "at or near the time" Trevino signed the document. Dkt. No. 22 at 6. Trevino cites no authority to support his argument. Furthermore, the Court notes that other courts have found electronically signed arbitration agreements admissible as evidence. *See Tagliabue v. J.C. Penney Corp., Inc.*, No. 15-cv-01443 SAB, 2015 WL 8780577, at *3 (E.D. Cal. Dec. 15, 2015) (admitting plaintiff's personnel file which included the arbitration clause after it was authenticated by the human resource managers); *Espejo v. Southern California Permanente Med. Group*, 246 Cal. App. 4th 1047, 1053–54 (2016) (considering only authentication for purposes of admitting electronically signed agreement).

Therefore, the Court concludes that Exhibit C is admissible.

**2. A Valid Arbitration Agreement Exists.**

Next, Trevino argues: (i) that the evidence does not authenticate the signed arbitration agreement and (ii) that Trevino did not understand what the arbitration agreement meant.

### i. The Arbitration Agreement Is Authenticated.[2]

First, the Court considers Trevino's argument that Mosaic has failed to meet its burden of authenticating the signed arbitration agreement and proving that a valid agreement exists. Dkt. No. 22 at 2–6. In particular, Trevino points to the fact that the arbitration agreement does not have his physical signature on it and merely contains six asterisks on the signature line. Dkt. No. 18-1 (Trevino Decl.)

To satisfy the requirement of authentication, the proponent must produce evidence "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Court may consider "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). Furthermore, in California, the Uniform Electronic Transaction Act provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form[,]" or "because an electronic record was used in its formation." Cal. Civ. Code § 1633.7(a).

First, Mosaic provides the declarations of Ava Miner, the onboarding manager for Mosaic. Dkt. No. 8-1 (Miner Decl.) at 1–3; Dkt. No. 21-1 (Suppl. Miner Decl.) at 2–4. Miner established that she was "a person with knowledge" as required by Federal Rule of Evidence 901(b)(1) by declaring that her responsibilities include: "the overall processes and implementation of policies involving documentation related to the hiring of new employees." Dkt. No. 8-1 (Miner Decl.) at 1. Next, she declared that Exhibit C is a true and correct copy of the arbitration agreement signed by Trevino.[3] *Id.* at 3. She also

---

[2] The Court must determine whether the arbitration agreement is authenticated both to determine admissibility as evidence and sufficiency to prove that the agreement to arbitrate was made. Therefore, the Court merges the two tasks here.

[3] Trevino's argument that Miner was "equivocal" in her declaration that Trevino signed the arbitration agreement is without merit. Dkt. No. 22 at 4. Miner certainly could have been clearer. However, the Court disagrees that the only conclusion to draw from Miner using the word "policy" instead of "agreement" is that she is being "equivocal." Federal Rule of Evidence 901(b)(4) compels the Court to consider "all the circumstances." Exhibit B indicates that Trevino completed the "US Candidate Arbitration Agreement," furthermore, Trevino admits electronically signing some documents, though he can't remember exactly what. Dkt. No. 8-1 at 6; Dkt. No. 18-1 (Trevino Decl.) at 2. Consideration of all the circumstances indicates that Trevino signed the document.

Case No. 17-cv-06529 NC          8

detailed the procedures necessary to complete the onboarding process. Dkt. No. 8-1 (Miner Decl.) at 1–3; Dkt. No. 21-1 (Suppl. Miner Decl.) at 2–4. She declared that Trevino completed the onboarding process and referred to true and correct copies of the Taleo system screen shot (Exhibit B) and email offer (Exhibit A.) *Id.*; Dkt. No. 8-1 (Miner Decl.) at 6. Finally, she testified that the only way for Trevino to "complete" the arbitration agreement is to "log in to the onboarding system using his user name and password, complet[e] all of the prior tasks, and the typ[e] his name in to acknowledge the Arbitration Policy." Dkt. No. 21-1 (Suppl. Miner Decl.) at 2. Trevino provides no alternative explanation for how the task would have been marked as "complete" if Trevino had not completed it.

Additionally, Mosaic presents the email offer, the onboarding system screen shot, and the arbitration agreement as physical evidence that Trevino signed the arbitration agreement. Dkt. No 8-1 (Miner Decl.) at 5–10. The email offer contains the instructions for accessing the onboarding platform, Taleo, including his user name. *Id*. The screen shot contains Trevino's full name and lists the tasks Trevino has "completed" including "US Candidate Arbitration Agreement." *Id*. The arbitration agreement contains the terms of arbitration, including the waiver of class status, and includes a signature line at the end which is populated by six asterisks under the words "Associate Signature." *Id*.

In response, Trevino argues that he did not input the asterisks as his signature and thus, defendants cannot prove that he actually signed the agreement. Dkt. No. 18 at 11.

In *Tagliabue*, the court explained that the plaintiff's argument that the arbitration agreement was unenforceable because it did not contain his physical signature lacked merit. *Tagliabue*, 2015 WL 8780577, at *3. The court there did not rely on the appearance of the signature at all. Instead, the court cited other courts that found the "declaration of the human resource employees sufficient to authenticate electronic signatures." *Id.* (citing *Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1076 (N.D. Cal. 2014); *Langston v. 20/20 Companies, Inc.*, No. 12-cv-1360 JGB, 2014 WL 5335734, at *5–6 (C.D. Cal. Oct. 7, 2014); *Jones-Mixon v. Bloomingdale's, Inc.*, No. 14-cv-01103

Case No. 17-cv-06529 NC         9

JCS, 2014 WL 2736020, at *4 (N.D. Cal. June 11, 2014). The court then detailed the declarations of human resources managers including: a statement that the plaintiff electronically signed the agreement, a description of the employee processes for completing company policies, and a confirmation that the arbitration agreement was a required step. *Tagliabue*, 2015 WL 8780577, at *3.

Here, similar to *Tagliabue*, the Court finds the declarations of Ava Miner, the onboarding manager, sufficient to prove that Trevino electronically signed the arbitration agreement because like in *Tagliabue*, the declarations prove that signing the arbitration agreement was required of all new employees like Trevino. *See also Taft v. Henley Enterprises, Inc.*, No. 15-cv-1658 JLS, 2016 WL 9448485, at *3 (C.D. Cal. Mar. 2, 2016) (considering that plaintiff completed other steps of the onboarding process as evidence that plaintiff signed the arbitration agreement). By Trevino's own declaration, he was hired, he completed the onboarding process, and "typ[ed] his last name more than once in order to acknowledge one thing or another." Dkt. No. 18-1 (Trevino Decl.) at 2. Like in *Tagliabue,* the argument that his physical signature does not appear on the document is without merit.

Yet, the Court recognizes the fact that the arbitration agreement contains only asterisks and that Trevino's name is not written anywhere on the arbitration agreement. However, in *Tagliabue*, the court did not consider what the non-physical signature looked like in order to determine if the agreement was authenticated; there was no discussion of whether the computer generated signature appeared to be the plaintiff's name. *Tagliabue*, 2015 WL 8780577, at *2–3. Instead, as already noted, the court looked only to the declarations of the human resource managers to verify that completing the onboarding process required a signature on the arbitration agreement and that the plaintiff completed the onboarding process. *Id.* The defendant's declarations established both points. *Id.* Therefore, the court inferred that the arbitration agreement was signed by the plaintiff. Here, the asterisks look nothing like "Trevino;" however, the declarations of Miner are evidence that the agreement was electronically signed by Trevino because Miner declared

Case No. 17-cv-06529 NC          10

that completing the onboarding process required a signature on the arbitration agreement and that Trevino completed the onboarding process. Dkt. No. 21-1 (Suppl. Miner Decl.) at 2–3; Dkt. No. 8-1 (Miner Decl.) at 4. The Court also notes that Mosaic's burden is only to prove "by a preponderance of the evidence" that Trevino signed the agreement; the asterisks cast some doubt, but the evidence proves, more likely than not, that Trevino signed the agreement. *Taft*, 2016 WL 9448485 at *3 (explaining that moving party must prove by a preponderance of the evidence that the signed arbitration agreement was authentic). As Trevino provides no evidence to contradict Mosaic's, other than Trevino's declaration that he did not remember everything he signed, the Court finds by a preponderance of evidence that Trevino signed the arbitration agreement.

### ii. Trevino's Lack of Understanding Does Not Invalidate the Agreement.

Finally, the Court considers Trevino's statement in his declaration that he does not remember ever reading the arbitration agreement and would not have understood it if he had. Dkt. No. 18-1 (Trevino Decl.) at 2.

Under California law, a contract requires mutual assent, sufficiently definite contractual terms, and consideration. *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1142 (N.D. Cal. 2013). Mutual assent cannot exist unless the parties "agree on the same thing in the same sense." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006). Mutual assent is determined objectively based on the reasonable meaning of the parties' words and actions. *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 173 (2015).

The Court is unpersuaded by Trevino's argument that his lack of understanding is grounds to invalidate the agreement because the agreement is clearly labeled with "ARBITRATION AGREEMENT" at the top of the page and does not appear to be concealed in any way from Trevino before he had to sign it. Dkt. No. 8-1 (Miner Decl.) at 7–10; *see Serafin*, 235 Cal. App. 4th at 174–75 (finding arbitration agreement sufficiently conveyed to employee when clearly labeled and set out from the other terms of the

Case No. 17-cv-06529 NC                 11

employment contract rather than buried in a lengthy employee handbook).  Furthermore, the Court cannot invalidate the terms of the signed arbitration agreement merely because Trevino did not understand the agreement or chose not to read it; such a ruling would undermine the "liberal policy favoring arbitration agreements" by allowing any party to claim a failure of mutual assent when forced to arbitrate against their will.  *Concepcion*, 563 U.S. at 339.  Trevino's subjective intentions are simply not enough because the Court finds that the "reasonable meaning" of Trevino's electronic signature was a manifestation of assent to the terms of the arbitration agreement.

Therefore, the Court concludes that a valid arbitration agreement exists.  Thus, it may only be invalidated by a defense applicable to any contract.  *Id.*  Next, the Court considers Trevino's suggestion that unconscionability presents such a defense.

### C. The Arbitration Agreement Is Not Unconscionable.

Trevino argues that even if an arbitration agreement exists, it is unenforceable because it is unconscionable.  Dkt. No. 18 at 13.

Under California law, a court may find a contract unenforceable or limit a clause of the contract if it is found to be unconscionable at the time it was made.  Cal. Civ. Code § 1670.5(a).  "A contract or provision, even if consistent with the reasonable expectations of the parties will be denied enforcement if, considered in its context, it is unduly oppressive or unconscionable."  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000).  A finding of unconscionability requires both a procedural and substantive component, though they "need not be in the same degree."  *Id.* at 114.

#### 1. Procedural Unconscionability

Procedural unconscionability concerns the level of oppression and surprise involved in the negotiation of the agreement.  *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013).  Oppression addresses the relative bargaining power of the parties, while surprise addresses the degree of clarity of the agreement and the expectations of the weaker party.  *Id.*

Trevino argues that the agreement is procedurally unconscionable because:

Case No. 17-cv-06529 NC        12

(i) Trevino was not provided with the American Arbitration Association ("AAA") rules for arbitration procedures, (ii) the parties had unequal bargaining power, and (iii) the opt-out provision was not "set apart in different sized text." Dkt. No. 18 at 14–15. The Court evaluates each argument in turn.

### i. AAA Rules

"Failure to provide the applicable arbitration rules is [a] factor that supports procedural unconscionability." *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 84–85 (2014). This failure contributes to procedural unconscionability because the employee must make an effort to look to another source to "find out the full import of what he or she is about to sign." *Id.* However, the Court notes several courts that have held agreements that incorporated commonly used arbitration rules by reference are not procedurally unconscionable. *See Greer v. Sterling Jewelers, Inc.*, No. 18-cv-480 LJO, 2018 WL 3388086, at *4 (E.D. Cal. July 10, 2018) (finding arbitration agreement not procedurally unconscionable because the agreement directed plaintiff to review the National Arbitration and Mediation rules online); *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 718 (2004) (finding incorporation of AAA rules by reference is sufficient); *see also Carbajal v. Rentokil N. Am., Inc.*, No. 17-cv-06651 YGR, 2018 WL 3304635, at *5 (N.D. Cal. July 5, 2018) (explaining that failure to attach AAA rules does not establish procedural unconscionability under California Law) (citing *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1246 (2016)).

The arbitration agreement says that arbitration will be administered by the AAA and according to its rules. Dkt. No. 8-1 at 7. It is true that the agreement does not set out these rules and the record does not indicate that Trevino was otherwise provided with the rules. However, Mosaic argues that Trevino could have easily accessed the rules online via a "hyperlink" provided in the agreement. Dkt. No. 21 at 8. Mosaic also argues that the agreement states that the rules will be provided to "anyone who requests them." *Id.* The Court finds that Mosaic provided Trevino a full opportunity to view the AAA rules before signing.

Case No. 17-cv-06529 NC 13

The Court acknowledges cases cited by Trevino (in particular *Carlson v. Home Team Pest Def., Inc.*, 239 Cal. App. 4th 619, 632–633 (2015); *Carmona,* 226 Cal. App. 4th at 84–85) that have found the failure to provide arbitration rules is procedurally unconscionable. However, the court notes that in *Carlson* and *Carmona*, the arbitration agreements did not contain instructions on how to obtain the arbitration rules, much less a hyperlink to view them online. *Carlson*, 239 Cal. App. 4th at 632–633; *Carmona*, 226 Cal. App. 4th at 84–85. The Court finds Mosaic's efforts to provide Trevino with the AAA rules are sufficient such that if Trevino had wanted to look at the rules before signing the agreement, he could have. Therefore, the failure to explicitly provide the AAA rules does not establish procedural unconscionability.

### ii. Opt-Out Provision

Trevino argues that the waiver of class status opt-out provision was procedurally unconscionable because it was "on the very last page" and "not set apart in different sized text." Dkt. No. 15. Trevino cites no authority for this proposition. Accordingly, the Court finds that Trevino's argument lacks merit.

### iii. Unequal Bargaining Power

Trevino also argues that because he was provided with the arbitration agreement on a take-it-or leave-it basis, he was not afforded the opportunity to negotiate, and that establishes procedural unconscionability. Trevino cites Ninth Circuit precedent for the proposition that when parties do not have equal bargaining power and the terms of a contract are presented as non-negotiable, the procedural element of unconscionability is established. *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 784 (9th Cir. 2002) (applying California law). The Court also notes other cases where the Ninth Circuit has found take-it-or-leave-it contracts to be procedurally unconscionable. *See Chavarria*, 733 F.3d at 923 (finding procedural unconscionability where an employee is presented with a contract drafted by an employer as a condition of employment and on a take-it-or-leave-it basis); *see also Tagliabue*, 2015 WL 8780577, at *5 (same). Here, Trevino is not in a position to change the terms of the arbitration agreement and it is clear that had Trevino

not signed the arbitration agreement, then his offer would likely have been rescinded. *See* Dkt. No. 21-1 (Suppl. Miner Decl.) at 2. The Court finds that this fact indicates some "oppression" was involved in the agreement because Trevino was not in a position to negotiate.

The Court considers the fact that Trevino wasn't provided with an opportunity to negotiate the terms of the agreement as an indication of some procedural unconscionability.

Thus, the Court finds that the failure to provide the AAA rules and the placement of the opt-out provision do not establish procedural unconscionability. However, the take-it-or-leave-it nature of the agreement establishes some degree of procedural unconscionability. *Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 248 (Ct. App. 2016) (finding "some degree" of procedural unconscionability because arbitration agreement was presented as an adhesion contract). With that in mind, the Court proceeds to consider if the agreement was substantively unconscionable.

### 2. Substantive Unconscionability

"A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it shocks the conscience." *Chavarria*, 733 F. 3d 916, 922 (9th Cir. 2013).

Trevino argues that the arbitration agreement is substantively unconscionable because it: (i) lacks a "modicum of bilaterality" and (ii) improperly limits his right to conduct discovery.

#### i. Modicum of Bilaterality

First, the Court finds that the agreement is sufficiently bilateral because it requires both parties to arbitrate employment disputes and is thus distinguishable from *Armendariz*. In *Armendariz*, the California Supreme Court held that an arbitration agreement was unconscionable if it required the employee to arbitrate his claims but exempted the employer from arbitrating his claims—thus lacking a "modicum of bilaterality." *Armendariz*, 24 Cal. 4th at 120. Here, however, the arbitration agreement explicitly states:

Case No. 17-cv-06529 NC    15

"[t]he mutual obligations by the Company and Associate to arbitrate disputes provide consideration for this Agreement." Dkt. No. 8-1 at 7. Furthermore, the agreement does not go on to define claims which would not mutually require arbitration. Thus, the Court finds that the agreement is sufficiently bilateral.

Still, Trevino argues that the agreement is not bilateral because there would never be a situation where the employer would seek a class action against an employee and thus the agreement unduly favors Mosaic. Dkt. No. 18 at 12. This argument fails for the following two reasons.

First, Trevino cites *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003), for the proposition that substantive unconscionability is presumed in an arbitration agreement and can only be rebutted by the employer showing that the agreement is bilateral in effect, but *Ingle* does not stand for this proposition. In *Ingle*, the arbitration agreement explicitly exempted the employer from arbitrating certain claims that it required the employee to arbitrate and was therefore explicitly not bilateral. *Ingle,* 328 F.3d at 1172. Here, unlike in *Ingle*, Mosaic does not bear the burden of showing that the agreement is bilateral in effect because it is explicitly bilateral, as explained above.

Second, in *Epic Systems Corp.* the Supreme Court clearly held that waivers of class status are enforceable. As Trevino's argument challenges waiver of class status in the abstract, it is directly rebutted by the Supreme Court. *Epic Systems Corp.*, 580 U.S. at 9 (explaining that an unconscionability defense to an arbitration agreement on the basis of lack of bilateral procedures "impermissibly disfavors arbitration").

### ii. Discovery Limitations

Finally, Trevino challenges the availability of discovery in the agreement because it incorporates the AAA rules for discovery and those rules do not provide adequate discovery. Dkt. No. 18 at 13. The Court finds the discovery provisions in the AAA rules are not unconscionable because other courts have found that the AAA rules for discovery provide parties with a sufficient opportunity for discovery. *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1475–76 (2009) (finding no meaningful difference between AAA

Case No. 17-cv-06529 NC        16

rules for discovery and the discovery rules in the California Arbitration Act, found sufficient by the California Supreme Court in *Armendariz*); *see also Saline v. Northrop Grumman Corp.*, No. 08-cv-08398 MMM, 2009 WL 10674037, at *16–18 (C.D. Cal. Feb. 9, 2009) (collecting cases).

Thus, the arbitration agreement is not substantively unconscionable. Therefore, despite there being some degree of procedural unconscionability, the arbitration agreement is not unconscionable and must be enforced.

## IV. CONCLUSION

The Court finds no basis to invalidate the arbitration agreement signed by Trevino and must enforce the agreement according to its terms following the recent ruling in *Epic Systems Corp*. Those terms indicate that Trevino agreed to arbitrate his claims and to do so as an individual. Therefore, Mosaic's motion to compel arbitration is GRANTED and Trevino is required to arbitrate his claims against Mosaic as an individual. Accordingly, this action is STAYED under 9 U.S.C § 3. The Clerk of the Court is ordered to administratively close this case. The parties are directed to provide the Court with notice within 7 days of completing arbitration.

**IT IS SO ORDERED.**

Dated: July 23, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge